UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER DISBROW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:15 CV 308 CDP |
| | ) | |
| OTICON, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Jennifer Disbrow claims she was terminated from her employment with defendant Oticon, Inc. in retaliation for taking leave under the Family Medical Leave Act due to a back injury. Oticon has filed a motion for summary judgment arguing that Disbrow cannot make out a prima facie FMLA discrimination claim because the evidence shows she was terminated as a result of insubordination and unapproved absences for personal vacation time. Oticon argues that even if Disbrow can prove her prima facie case, Oticon has articulated a nondiscriminatory reason for terminating her employment, which Disbrow cannot show was pretextual. After careful consideration, I conclude that Disbrow has failed to present evidence from which a reasonable jury could infer that there was a causal connection between her termination and her use of FMLA leave. Therefore, I will grant Oticon's motion for summary judgment.

## I. Standards Governing Summary Judgment

"Summary judgment is proper where the evidence, when viewed in a light most favorable to the non-moving party, indicates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Davison v. City of Minneapolis, Minn.*, 490 F.3d 648, 654 (8th Cir. 2007); *see* Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Id.* "The basic inquiry is whether it is so one-sided that one party must prevail as a matter of law." *Diesel Machinery, Inc. v. B.R. Lee Industries, Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (internal quotation marks and citation omitted). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (citation omitted). If the movant does so, "[t]he nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks and citation omitted).

## II. Undisputed Facts

Disbrow began working for Oticon as a Technical Support Audiologist in January 2010. She was hired to work Monday through Friday, 40 hours per week. In 2010 and 2012 Disbrow was permitted to take 12 weeks and 24 weeks, respectively, of maternity leave after having each of her two children. When Disbrow came back from her 2012 leave, she was permitted to reduce her schedule so that she worked only Monday through Thursday. Her supervisor at the time, and the person who approved this schedule change, was Hrishali Sule-Talathi.

In October 2013, Sule-Talathi informed Disbrow that "executive staff and HR" had reviewed Disbrow's existing work schedule and had not approved it. Sule-Talathi asked Disbrow to please start looking at options for childcare on Fridays so that she could resume her 40-hour schedule. Two months later, in December, Sule-Talathi again told Disbrow that business needs required her to return to a full-time schedule, which would begin on January 6, 2014. On January 6, Disbrow told Sule-Talathi that she had been unable to find a childcare provider for Fridays and requested that the issue be postponed until June. Sule-Talathi agreed to this.

In early June 2014, Sule-Talathi again told Disbrow that she needed to resume her full-time schedule and that it would begin June 30. On June 17, Disbrow had a conference call with Sule-Talathi and HR Manager Maureen Seber.

Seber told Disbrow she could either resume a full-time schedule on June 30 or resign from her position. Disbrow was resistant to the schedule change. She stated she felt targeted and that she did not know how she was going to find childcare before June 30. She asked more than once if she could use her remaining vacation time on Fridays until it ran out. Seber told her she could not. Disbrow also expressed concern about vacation days she had previously requested. The conversation regarding previously approved vacation requests went as follows:

> JD: I mean, I'm on scheduled vacation next Friday. Well, I'm on vacation that whole week. When I put my vacation time in I did not work Fridays so I did not request Friday off.
>
> MS: Sure, because you weren't working.
>
> JD: But I'm out Monday through Thursday, so I, I need to be out all of next week.
>
> MS: Because of your vacation.
>
> JD: Because I'm going on vacation.
>
> MS: Vacation schedule is, is approved by Hrshali, that's not a problem.
>
> JD: And all of the vacation that I have scheduled currently was according to me not working on Fridays.
>
> MS: Right.
>
> JD: So anytime that I'm taking –
>
> MS: Right.
>
> JD: – Monday through Thursday, I need –
>
> MS: Right.
>
> JD: – the Friday off as well.

> MS: Sure. Sure. […]

After the telephone conference, Disbrow took the remainder of June 17 and all of June 18 off as sick days. On June 19 she informed Seber that she would be able to resume a full-time schedule as of June 30 but that she would be out on disability leave until July 7. She provided a doctor's note confirming she had a back injury and was unable to work. Oticon immediately provided Disbrow with Department of Labor Form WH-382, which designated her leave as FMLA protected, and DOL form WH-380-E, which was to be completed and returned by Disbrow's medical provider. Form WH-382 stated that if there were no deviation from Disbrow's anticipated leave schedule, 12 weeks would be counted against her leave entitlement. The form also stated "[t]he FMLA requires that you notify us as soon as practicable if dates of scheduled leave change or are extended or were initially unknown."

Around July 7, Disbrow provided a second doctor's note to Oticon that said she could return to work on July 14. Disbrow worked Monday, July 14 and Tuesday, July 15, but did not come to work Wednesday or Thursday of that week (July 16 or 17). On these days she sent a text message to Sule-Talathi saying that she would not be in to work due to her back injury. Sule-Talathi told Disbrow Oticon would need a new doctor's note for her July 16 and 17 absences.

On Friday, July 18, Disbrow again did not come in to work. When Sule-Talathi asked why, Disbrow responded via text, "We discussed this at our meeting. My plans to go out of town next week included today. All of the vacation I had requested did not include Fridays."

The following week, Disbrow was on previously approved vacation from Monday, July 21 through Wednesday, July 23. However, she did not show up to work Thursday, July 24 or Friday, July 25, which were not pre-approved vacation days. When Sule-Talathi asked where Disbrow was on July 24, Disbrow responded that she was on vacation for the week. When Disbrow failed to show up for work on July 25, Sule-Talathi and Seber determined that her insubordination and unexcused absences were sufficient to warrant termination. Disbrow was terminated from Oticon's employment the following Monday, July 28, 2014.

Oticon did not receive a completed form WH-380-E until July 21, 2014. In that form, Disbrow's medical provider "estimated" the beginning and ending dates of her incapacity as June 6, 2014 – July 14, 2014. The provider also noted that Disbrow may "from time to time suffer exacerbations of her condition causing pain and incapacity." Disbrow never provided the requested medical certification for her FMLA absences on July 16 and 17. In this action, Disbrow claims she was terminated in retaliation for taking FMLA leave.

## III. Discussion

Oticon argues that Disbrow cannot make out a prima facie case of FMLA discrimination because she cannot show that her termination was causally linked to her use of FMLA leave. Even if Disbrow can establish the elements of a prima facie case, Oticon argues that it has articulated a legitimate, non-retaliatory reason for terminating Disbrow (insubordination and multiple unapproved absences), which Disbrow cannot show was pretextual.

In response, Disbrow argues that she was approved for 12 weeks of FMLA leave, tried to come back multiple times before she was ready, and was only terminated after she failed to return to work because of her injury. Disbrow asserts she was terminated for attendance issues that stemmed from her use of FMLA leave. She claims Oticon's argument that she was terminated for taking unapproved vacation days is pretextual because the facts show the vacation time she took was approved by Sule-Talathi and Seber during their June 17 phone call.

In the absence of direct evidence of retaliation, FMLA retaliation claims are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see Phillips v. Mathews*, 547 F.3d 905, 912 (8th Cir. 2008). The first step in analyzing an FMLA retaliation claim is determining whether a plaintiff has made a prima facie showing of retaliation. At this step, a plaintiff must show: (1) she exercised rights afforded by the FMLA; (2) she

suffered an adverse employment action; and (3) there was a causal connection between her exercise of rights and the adverse employment action. *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832 (8th Cir.2002) (*citing Darby v. Bratch*, 287 F.3d 673, 679 (8th Cir.2002)). If a plaintiff has alleged sufficient facts for a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action. *Phillips*, 547 F.3d at 912. Once such a reason is articulated, the burden of production shifts back to the plaintiff to demonstrate that the proffered non-discriminatory reason is a pretext for retaliation. *Id*. An employee may demonstrate that a proffered reason is pretextual by "showing that 'the employer's proffered explanation is unworthy of credence' or 'persuading the court that a prohibited reason more likely motivated the employer.'" *Hudson v. Tyson Fresh Meats, Inc.*, 787 F.3d 861, 866 (8th Cir. 2015) (citing *Stallings v. Hussman Corp.*, 447 F.3d 1041, 1051 (8th Cir. 2006)). If an employer bases its decision on an honestly-held belief unrelated to the FMLA, its decision is nondiscriminatory even if that belief is mistaken. *Id*.

The only element of Disbrow's prima facie case that Oticon disputes is the existence of a causal link between Disbrow's FMLA leave and her discharge. As proof of a causal link, Disbrow appears to rely exclusively on the temporal

proximity between her FMLA leave and her discharge.[1]  "[E]vidence that gives rise to an inference of a retaliatory motive on the part of the employer is sufficient to establish a causal link." *Hite v. Vermeer Mfg. Co.,* 446 F.3d 858, 866 (8th Cir. 2006)(internal quotation marks and citation omitted).  An employee can establish a causal link between her protected activity and an adverse employment action through temporal proximity of the two events.  *Id*.  However, in order for timing alone to be enough, the temporal proximity must be "very close."  *Wallace v. Sparks Health Sys.*, 415 F.3d 853, 859 (8th Cir. 2005).  In calculating temporal proximity in FMLA cases, the Eighth Circuit looks to the date an employer knew of an employee's use (or planned use) of FMLA leave, not the date the leave ended.  *Sisk v. Picture People, Inc.*, 669 F.3d 896, 900 (8th Cir. 2012) (citing *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir. 2002)).  However, the Eighth Circuit has "not drawn a definitive line" as to how much time is too much to support a finding of causation without other evidence.  *Id*. at 901.

The only evidence of causation Disbrow has asserted is some temporal proximity between her FMLA leave and her termination.  But the time between these two events was more than a month, and when it is considered against the

---

[1] Disbrow spends a paragraph of her summary judgment response addressing the element of causal connection, but she points to no actual evidence of a causal connection other than timing.  Instead, she seems to rely on unsupported conjecture as to Oticon's motives: "Defendant terminated Plaintiff to find someone else who wouldn't require FMLA leave." "It was only after Plaintiff had failed to return to work for the second time because of her injury that Defendant decided enough was enough and terminated her for attendance issues that stemmed from her use of FMLA leave."

backdrop of the other undisputed facts in this case, no reasonable jury could infer a causal connection between Disbrow's FMLA leave and her termination. As discussed above, during the course of Disbrow's employment, Oticon demonstrated a repeated willingness to work with her to accommodate her family and personal obligations. When Disbrow requested FMLA leave in June 2014, she was immediately provided with the proper DOL forms and granted the maximum leave available to her, if needed. When Disbrow returned to work on July 14 and 15 after more than a month of FMLA leave, Oticon did not discharge her. When Disbrow informed her supervisor she was taking another two days of FMLA leave on July 16 and 17, Oticon still did not discharge her. Instead, it was not until more than a week later, after Disbrow had taken three days of non-FMLA related, unapproved, personal vacation leave, that she was terminated. Disbrow first informed Oticon of her FMLA leave on June 19, and she was terminated on July 28, more than a month later. In the absence of any other evidence of a retaliatory motive on Oticon's part, the temporal proximity of Disbrow's leave and discharge is not close enough for a reasonable jury to infer a causal link for purposes of her prima facie case. *See Smith v. Fairview Ridges Hosp.*, 625 F.3d 1076, 1088 (8th Cir. 2002) (one month between leave and retaliatory event not close enough); *Wisbey v. City of Lincoln, Neb.*, 612 F.3d 667, 676 (8th Cir. 2010) (same); cf. *Allen*

*Health Sys.*, 302 F.3d 827, 833 (8th Cir. 2002) (two weeks between beginning of leave and discharge was "sufficient, but barely so, to establish causation").

Because Disbrow has failed to establish facts sufficient to support a prima facie claim of FMLA retaliation, Oticon's motion for summary judgment is granted.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment is **GRANTED**.

A separate final judgment is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 4th day of February, 2016.